UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | | |
|---|---|---|
| TALIA WELLENSTEIN, | ) | CIV. 10-4078-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| RENZO CAPOCCI, | ) | |
| | ) | |
| Defendant. | ) | |

    Plaintiff, Talia Wellenstein, filed suit against defendant, Renzo Capocci, claiming emotional damages stemming from her sexual molestation by Capocci. Capocci now moves for a protective order to prohibit Wellenstein from taking certain depositions. Wellenstein moves to strike a factual statement from Capocci's memorandum in support of the protective order. Wellenstein also moves to compel certain discovery from Capocci. Capocci's motion for a protective order is denied in part and granted in part. Wellenstein's motion to strike is denied as moot. Wellenstein's motion to compel is granted in part and denied in part.

## BACKGROUND

    The pertinent facts to these orders are as follows: On June 6, 2006, Wellenstein babysat for Capocci's children in Yankton County, South Dakota. While Wellenstein was babysitting, Capocci returned to the residence and engaged in improper sexual contact with Wellenstein, then 14

years old, without Wellenstein's consent. At the time of this incident, Capocci lived in southern Florida.

The state of South Dakota brought criminal charges against Capocci under SDCL 22-22-7.4, which outlaws sexual contact with a person capable of consenting, but whose consent was not obtained.[1] On October 11, 2006, Capocci pleaded guilty to the charge. On October 10, 2006, Capocci appeared with David Hosmer, the attorney who represented Capocci in the criminal matter, for the sentencing phase of the trial. The Honorable Glen W. Eng for the First Judicial Circuit in Yankton, South Dakota, sentenced Capocci to 365 days in the Yankton County Jail, of which 275 days were suspended, and he placed Capocci on probation for 2 years.

Wellenstein then brought a civil suit against Capocci for damages resulting from her severe anxiety, fear, and other emotional and physical pain that occurred after the sexual assault. The parties are in the discovery phase of this matter.

---

[1] "**Sexual contact without consent with person capable of consenting as misdemeanor.** No person fifteen years of age or older may knowingly engage in sexual contact with another person other than his or her spouse who, although capable of consenting, has not consented to such contact. A violation of this section is a Class 1 misdemeanor." SDCL 22-22-7.4.

**DISCUSSION**

I.  **Motion for a Protective Order**

Discovery is for the parties to work out by themselves and the court should only be involved if the parties have reached the conclusion that they are at an impasse. *Krupp v. St. Louis Justice Cntr.*, No. 4:07-CV-882, 2007 WL 3232252, at *1-*2 (E.D. Mo. Oct. 29, 2007); *see also Intermedics, Inc. v. Cardiac Pacemakers, Inc.*, No. 4-95-716, 1998 WL 35253490, at *17 n.17 (D. Minn. 1998) (noting that extensive discovery disputes occupy significant judicial resources). On both of the pending discovery motions, the parties have certified that they have again reached a stumbling point on discovery and require the court's intervention.

Wellenstein has notified Capocci that "she will be contacting his [Capocci's] employer and work colleagues, friends, family, his children's Boy Scout leaders, his children's schools and church members to discover whether Defendant has an alcohol problem and if he has committed any similar acts alleged in this lawsuit." Docket 41 at 2. Capocci seeks a protective order to prevent Wellenstein from completing this discovery.

"The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . forbidding the disclosure or discovery . . . ." Fed. R. Civ. P. 26(c)(1)(A). Alternatively, the court can specify the terms of the

discovery. Fed. R. Civ. P. 26(c)(1)(B). The party seeking the protective order "must show that specific prejudice or harm will result if no protective order is granted." *Blair v. City of Omaha*, No. 8:07CV295, 2011 WL 148120, at *3 (D. Neb. Jan. 18, 2011).

### A.     Capocci's Alleged Alcohol Problems

Wellenstein seeks discovery on Capocci's alleged alcohol problems. In his criminal case, Capocci's attorney Hosmer stated the following at Capocci's sentencing hearing: "Renzo admits that he has a drinking problem and I think it's fair to say from the facts of this case that he has a drinking problem. . . . when he first - - this happened, he went to a psychologist in Florida. . . . She basically said his problem is that he's got an alcohol problem. . . . Right now he's in AA [Alcoholics Anonymous]." Docket 43-1 at 8. The sentencing court, relying on the Presentence Investigation report (PSI) and Hosmer's remarks, stated that

> [T]he problem that the court has with this is that when we have a situation like this particular one, the court cannot tell whether this is something that is limited to an alcohol induced behavior or whether it is something that is endemic in Mr. Capocci's character. . . . One thing with alcohol that I have seen and observed is that it only releases those inhibitions that a person has. It doesn't create a monster that wasn't there to begin with. So, if the behavior is brought on by alcohol, it is a behavior that is deeply ingrained within a person. The alcohol releases that because it releases inhibitions, and, so, what is masked in a person's life becomes a surface response.

Docket 43-1 at 9.

4

In his deposition for the civil case, Capocci testified contrary to Hosmer's remarks at sentencing: "I don't have a drinking problem. Probably I had a problem with drinking that night. . . . That night of the incident." Docket 43-1 at 13. When Wellenstein's attorney asked further questions, Capocci asserted his Fifth Amendment rights. Docket 43-1 at 13. Wellenstein's attorney then asked about the evaluations that were done for the PSI:

> Q: . . . Did you have an alcohol evaluation performed prior to the sentencing on October 10, 2006?
>
> A: No, there was no alcohol evaluation.
>
> Q: Were you following any recommendations from anyone relating to abstaining from alcohol?
>
> A: Yes.
>
> Q: Whose recommendations?
>
> A: Family, friends.
>
> Q: What family and what friends?
>
> A: My mom and friends. I don't remember. I said friends in general, but I should take that back, it's just who like anybody who cares about you will tell you when we spoke about this incident that was out when we spoke, it's any friend will give a recommendation don't drink too much, right?
>
> . . .
>
> Q: All right. Mr. Hosmer goes on to say on page 4 starting at line 4, right now he is in AA, referring to you. Did you ever go to AA?

> A:   No.
>
> . . .
>
> Q:   Other than Mr. Hosmer, did you tell anybody that you were going to AA?
>
> A:   No. I didn't go to AA.
>
> . . .
>
> Q:   Why didn't you correct Mr. Hosmer when he told that to the judge on your behalf to try to get you a lesser sentence?
>
> A:   I wanted the matter to be resolved quickly so he said what he had to say.

Docket 43-1 at 15-17.

Wellenstein argues that "the drinking issue was Defendant's actual response to the acts alleged by Plaintiff and to which Defendant pled guilty." Docket 46 at 3. Capocci generally argued in his memorandum supporting his motion that any evidence of [his] drinking would not produce any relevant evidence and that "[attempted discovery of such [a] matter would only harass, embarrass, oppress and cause annoyance to Defendant and serve no legitimate purpose." Docket 41 at 4.

Capocci has directly put the question of whether he has an established problem with alcohol at issue in this case. Wellenstein seeks punitive damages in this case, *see* Docket 1-2 at 2, and Capocci's state of

6

mind will be relevant to determining punitive damages.[2] Had Capocci not changed his position between the time of his criminal sentencing and now, a protective order would be appropriate. But because Capocci is now denying he had a drinking problem and such evidence is relevant, Capocci's request for a protective order is denied.

### B. Past Sexual Contact with Minors

Wellenstein also seeks to depose Capocci's work colleagues, friends, etc., to ask if Capocci has committed any additional acts similar to those alleged in this lawsuit. Capocci argues that any such information would be inadmissible under Federal Rule of Evidence 404(b) and therefore is irrelevant. Normally, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

But this case is unique because the federal rules provide different evidentiary standards for past wrong acts in sexual assault cases. *See*

---

[2] South Dakota allows plaintiffs, in certain circumstances, to recover punitive damages. *Dahl v. Sittner*, 474 N.W.2d 897, 900 (S.D. 1991). Under SDCL 21-3-2, a plaintiff claiming punitive damages must show that "the defendant has been guilty of oppression, fraud, or malice, actual or presumed." "Actual malice is a positive state of mind, evidenced by the positive desire and intention to injure another, actuated by hatred or ill-will towards that person." *Dahl*, 474 N.W.2d at 902 (citing *Gamble v. Keyes*, 178 N.W. 870, 872 (S.D. 1920)). "Presumed, legal malice, on the other hand, is malice which the law infers from or imputes to certain acts." *Id.* (citing *Hannahs v. Noah*, 158 N.W.2d 678, 682 (S.D. 1968)).

*generally* Fed R. Evid. 412, 413, 414, and 415. Federal Rule of Evidence 415 provides that "[i]n a civil case in which a claim for damages or other relief is predicated on a party's alleged commission of conduct constituting an offense of sexual assault . . . evidence of that party's commission of another offense or offenses of sexual assault or child molestation is admissible . . . ." But Rule 415 "shall not be construed to limit the admission or consideration of evidence under any other rule." Fed. R. Civ. P. 415(c).

There is great potential for harassment or embarrassment to Capocci, however, if Wellenstein is allowed to ask anyone who knows Capocci whether he has ever had sexual contact with a minor. As a result, before Wellenstein deposes any proposed deponents on this issue, she must seek prior court approval after identifying to the court what relevant knowledge she believes the proposed deponent has regarding any sexual contact Capocci has had with minors and the basis for her belief. The motion for protective order is granted.

## II.     Motion to Strike Factual Misstatement

Wellenstein moves to strike a factual misstatement in Capocci's memorandum in support of his motion to compel. Capocci filed an amended memorandum in support that corrected the misstatement. *See* Docket 52. Accordingly, Wellenstein's motion to strike is denied as moot.

### III. Motion to Compel Responses to Deposition Questions

Wellenstein moves for various relief on her motion to compel. As an initial matter, Capocci moves to dismiss Wellenstein's motion because she failed to comply with D.S.D. LR 7.1B. LR 7.1B requires parties to file a brief containing specific points of law with supporting authorities for most motions. Wellenstein violated this rule because she did not provide any authorities in her motion. But dismissing a motion is an extreme sanction. Capocci was able to respond to Wellenstein's motion and suffered no prejudice as a result of Wellenstein's failure to comply with LR 7.1B. Thus, Wellenstein's motion to compel will not be dismissed.

In substantively responding to Wellenstein's motion, Capocci raises a number of arguments. For ease of readability, Wellenstein's requests in subsection 9 of her motion to compel are analyzed under the umbrella of Capocci's objections to the information sought.

#### A.     Attorney-Client Privilege

Capocci argues that the attorney-client privilege protects against Wellenstein's request 9(b): "Did he [Capocci] tell Hosmer he had a drinking problem." Docket 53 at 2. While Capocci contends that the information sought in question 9(b) is irrelevant, as stated above, evidence of any intoxication by Capocci at the time of the sexual assault is relevant in determining Capocci's mental state and intent at the time of the incident.

9

Because this is a civil case based on South Dakota substantive law, South Dakota's privilege rules apply. Fed. R. Evid. 501. Under South Dakota law, "[a] communication is 'confidential' if not intended to be disclosed to third persons other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." SDCL 19-13-2(5). There are numerous statutory exceptions to the attorney-client privilege, including "[i]f the services of the lawyer were sought or obtained to enable or aid anyone to commit or plan to commit what the client knew or reasonably should have known to be a crime or fraud . . . ." SDCL 19-13-5(1). Additionally, "[a] person upon whom this chapter confers a privilege against disclosure waives the privilege if he . . . voluntarily discloses or consents to disclosure of any significant part of the privileged matter. This section does not apply if the disclosure itself is privileged." SDCL 19-13-26.

The South Dakota Supreme Court has recognized "the need to narrowly interpret the privilege statutes since privileges 'are in derogation of the search for the truth.' " *State v. Witchey*, 388 N.W.2d 893, 895 (S.D. 1986) (quoting *United States v. Nixon*, 418 U.S. 683, 710 (1974)); *see also State v. Catch the Bear*, 352 N.W.2d 640, 646-47 (S.D. 1984) ("[P]rivileges created by statute are to be strictly construed to avoid suppressing otherwise competent evidence." (citations omitted)). The attorney-client

privilege is meant as a shield, not a sword. *State v. Karlen*, 589 N.W.2d 594, 601 (S.D. 1999). The South Dakota Supreme Court has "interpreted SDCL 19-13-26 to invoke waiver if the client voluntarily discloses the contents of the communication to a third party." *Id.* In disclosing the information to a third party, the client need not explicitly state that he "had this confidential communication." *State v. Guthrie*, 627 N.W.2d 401, 426 (S.D. 2001) (internal quotations omitted). Instead, SDCL 19-13-26 is concerned with the "voluntary disclosure of '**the contents** of the communication to a third party.' " *Id.* (quoting *Karlen*, 589 N.W.2d at 601).

If a client testifies in a deposition about the confidential communication with his attorney, he has waived the privilege. *See Hogg v. First Nat'l Bank of Aberdeen*, 386 N.W.2d 921, 926 (S.D. 1986) ("Testimony elicited before trial, as well as other pretrial tactics or events, can result in a waiver of privilege." (citations omitted)). Once a privilege is waived, it cannot be regained. *Id.* (citations omitted); *Catch the Bear*, 352 N.W.2d at 647 ("After an effectual waiver the privilege disappears and the barrier is removed." (citation omitted)).

Here, Capocci waived his attorney-client privilege in his deposition: "Q: Why didn't you correct Mr. Hosmer when he told that to the judge on your behalf to try to get you a lesser sentence? A: I wanted the matter to be resolved quickly so he said what he had to say." Docket 43-1 at 17. Later in

his deposition, Capocci stated that he had never been to an AA meeting, even though Hosmer told the criminal court that Capocci was seeing a psychologist for his alcohol addiction, that the psychologist told him to go to AA meetings, and that Capocci went to AA meetings. When Wellenstein's attorney asked follow-up questions as to Hosmer's conduct, Capocci was unable to answer for Hosmer's conduct: "Q: You said he had to say this stuff, why did he have to say it? A: Good question. Q: So as you sit here today you have no idea why David Hosmer told the court the things that he said on your behalf relating to alcohol, correct? . . . A: Yes." Docket 43-1 at 18.

Hosmer represented to the criminal court that Capocci was sorry for his actions. But during his deposition, when Wellenstein's attorney questioned Capocci on whether he was sorry for his conduct, Capocci denied that he was sorry for anything: "I cannot speak for Mr. Hosmer, but I think that as my lawyer he wanted to express an apology, but I cannot speak for him. . . . Once again I think that this case is something out of proportion, and I don't want to say that." Docket 43-1 at 22-23.

Capocci also denied the sexual contact in his deposition, even though he pleaded guilty in state court. Docket 43-1 at 23. When asked about this by Wellenstein's attorney, Capocci responded "[a]nd the reason that I pled

guilty was because to - at the advice of my lawyer just to get over and move on with everybody's lives." Docket 43-1 at 24.

Capocci's testimony in his civil deposition and Hosmer's arguments in the criminal sentencing are at odds with one another. Depending on what Capocci and Hosmer discussed in their meetings, Capocci either could have used Hosmer's services to commit a fraud on the criminal court or Hosmer himself committed fraud. In either situation, Capocci would be deemed to have waived his attorney-client privilege under SDCL 19-13-5(1). Alternatively, Capocci could have lied in his civil deposition and blamed Hosmer for the inaccurate information so that the attorney-client privilege would prevent Wellenstein from ascertaining the truth. In any of these scenarios, Capocci is attempting to use the attorney-client privilege as a sword to prevent Wellenstein and, potentially, the jury from hearing the truth. Furthermore, because Capocci testified that he relied on Hosmer's advice during the criminal case and that he indicated to Hosmer that Hosmer should take care of the criminal case as soon as possible, he has waived his attorney-client privilege with respect to his conversations with Hosmer concerning his criminal sentencing under SDCL 19-13-26.

Because Capocci waived the attorney-client privilege with respect to his criminal sentencing, Wellenstein's motion to compel a response to question 9(b) is granted.

### B.   Spousal Privilege

Question 9(i) asks Capocci if he ever told "his wife he held the victim's hand." Docket 53. Capocci argues that this information is privileged under the spousal privilege in SDCL 19-13-14, which states that "[t]he privilege described in § 19-13-13 may be claimed by the accused or by the spouse on behalf of the accused. The authority of the spouse to do so is presumed." Section 19-13-13 provides that "[a]n accused in a criminal proceeding has a privilege to prevent his spouse from testifying as to any confidential communication between the accused and the spouse."

The statutes asserted by Capocci only relate to criminal proceedings. Because privileges are to be narrowly construed, *Witchey*, 388 N.W.2d at 895, the court will not read into SDCL 19-13-14 that the privilege contained in that section applies to civil proceedings. Consequently, because Capocci makes no other argument on question 9(i), Wellenstein's motion to compel a response is granted as to question 9(i).

### C.   Medical Provider Privilege

Question 9(a) asks "[d]id Capocci advise the psychologist he had a drinking problem." Docket 53. Question 9(h) asks if Capocci ever discussed "drinking with the psychologist." Docket 53. Capocci asserts that the information sought in questions 9(a) and 9(h) are protected by the medical care provider privilege found in SDCL 19-13-7, which states that "[a] patient

has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of diagnosis or treatment of his physical, mental, or emotional condition, including alcohol or drug addiction . . . ."

There is conflicting testimony in this case about whether Capocci ever contacted a psychologist and whether the psychologist told him to attend AA meetings. At the criminal sentencing, Hosmer testified that Capocci was seeing a psychologist named Audria Labadue in Florida. Docket 43-1 at 8 (phonetic spelling by the court reporter). In his civil deposition, Capocci first stated that he only went to AA on the advice of his friends and family, not a psychologist, and then he stated that he never went to AA. Wellenstein has the right to determine if Capocci ever went to see Ms. Labadue or any other psychologist for his alleged alcohol problems and whether any psychologist or other mental health provider ever recommended AA. But the specifics of his conversations with Ms. Labadue or any other psychologist regarding any alcohol condition are not relevant and would violate the privilege in SDCL 19-13-7. Consequently, Wellenstein's motion to compel response to questions 9(a) and 9(h) is granted in part and denied in part.

    **D.**    **Presentence Investigation**

Wellenstein also seeks information regarding what Capocci stated in his PSI: "Did he [Capocci] write about a drinking problem in the PSI[?],"

question 9(d), and "[d]id he write the truth in the PSI[?]" Question 9(e), Docket 53. Wellenstein sought the disclosure of the PSI from the South Dakota trial court but was denied. Docket 58-2. Capocci has indicated that he will respond to questions 9(d) and 9(e) under oath in writing, but Wellenstein wishes to further depose Capocci about the PSI.

PSIs are protected documents under South Dakota law. *See generally* SDCL 23A-27-5 through 23A-27-10. The South Dakota Supreme Court has stated that "the statutes strictly limit disclosure to the court, the state, the defendant, the defendant's counsel, and the prison **officials involved in the case before the court**." *Goetz v. State*, 636 N.W.2d 675, 684 (S.D. 2001) (emphasis in original). An appropriate remedy is the one advanced by Capocci. Capocci is to answer questions 9(d) and 9(e) in writing under oath. Wellenstein's request for further inquiry during a deposition is denied.

### E. Fifth Amendment

During his civil deposition, Capocci often asserted his Fifth Amendment right against self-incrimination and asserts it now regarding questions 9(a), 9(b), 9(c), 9(e), 9(f), and 9(g).

"A court's determination of whether a witness has a valid claim for exercising the Fifth Amendment privilege against self-incrimination is highly fact-intensive." *United States v. Allmon*, 594 F.3d 981, 984 (8th Cir. 2010). The appellate court reviews for an abuse of discretion. *Id.* (citing *United*

16

*States v. Washington*, 318 F.3d 845, 855 (8th Cir. 2003)). "[T]he rights under the Fifth Amendment are not self-executing. It is a well-established rule that the Fifth Amendment privilege against self-incrimination must be asserted in a timely fashion by the person seeking its protection." *Id.* at 985 (citing *Roberts v. United States*, 445 U.S. 552, 559 (1980); *Island v. United States*, 946 F.2d 1335, 1339 (8th Cir. 1991)). "The claimant must make some positive disclosure showing that the danger of self-incrimination is 'real and appreciable, not remote and speculative.' " *Id.* (quoting *Ueckert v. Comm'r*, 721 F.2d 248, 250 (8th Cir. 1983)).

In his civil deposition and his response to Wellenstein's motion to compel, Capocci does not make any specific arguments as to how the danger of self-incrimination is real and not remote or speculative. If Capocci believes that his statements will put him in real danger of self-incrimination during his second deposition or in his additional written responses, then he needs to state a specific reason before he asserts his Fifth Amendment privilege. Without this specific showing, the court will not prospectively order that the Fifth Amendment protects Capocci from answering Wellenstein's questions 9(a), 9(b), 9(c), 9(e), 9(f), and 9(g).

### F.     Capocci's Second Deposition

Capocci asks that his second deposition be conducted via written questions under oath or via telephone. Capocci lives in southern Florida and

earlier sought a protective order to require Wellenstein to depose Capocci in southern Florida or via telephone. The court denied that request for a protective order. Docket 34.

The only reason that Capocci needs to be deposed again is because there are inconsistencies between his criminal sentencing hearing and his civil deposition and because Capocci refused to answer many questions after asserting his Fifth Amendment privilege. Capocci created this situation and Wellenstein should be able to depose Capocci in person in South Dakota. Capocci's request is denied.

G.  **Costs**

Wellenstein also seeks the costs she incurred in bringing this motion to compel. If a motion to compel is granted in part and denied in part, "the court may . . . after giving an opportunity to be heard, apportion the reasonable expenses for the motion." Fed. R. Civ. P. 37(a)(5). Because the court found merit in some of Capocci's arguments, an award of costs in this case is not warranted. Accordingly, it is

ORDERED that defendant's motion for a protective order (Docket 40) is granted in part and denied in part, plaintiff's motion to compel discovery

(Docket 53) is granted in part and denied in part, and plaintiff's motion to strike (Docket 47) is denied as moot.

Dated March 22, 2011.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
CHIEF JUDGE

19